UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| LOUISE GROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACKSON HOSPITAL CORPORATION | ) | |
| d/b/a KENTUCKY RIVER MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendant, | ) | Civil Action Nos. |
| | ) | 5:07-366-JMH |
| and | ) | 5:07-367-JMH |
| | ) | 5:07-368-JMH |
| FRANCES LYNN COMBS, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| JACKSON HOSPITAL CORPORATION | ) | |
| d/b/a KENTUCKY RIVER MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SHIRLEY WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACKSON HOSPITAL CORPORATION | ) | |
| d/b/a KENTUCKY RIVER MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**          **     **     **     **     **

This matter is before the Court upon Plaintiffs' Motions to

Remand, filed in their respective cases [Lexington Civil Action No.

07-cv-366-JMH, Record No. 12; Lexington Civil Action No. 07-cv-367-JMH, Record No. 15; and Lexington Civil Action No. 07-cv-368-JMH, Record No. 11]. Defendant has responded to the motions in each action [Lexington Civil Action No. 07-cv-366-JMH, Record No. 17; Lexington Civil Action No. 07-cv-367-JMH, Record No. 20; and Lexington Civil Action No. 07-cv-368-JMH, Record No. 16]. The time for reply has expired in each instance, and these motions are now ripe for consideration.

**I.   BACKGROUND**

**A.   Procedural Background**

Complaints were filed in Breathitt Circuit Court in the matters styled *White v. Jackson Hospital Corporation d/b/a Kentucky River Medical Center*, *Combs v. Jackson Hospital Corporation d/b/a Kentucky River Medical Center*, and *Gross v. Jackson Hospital Corporation d/b/a Kentucky River Medical Center*, on September 28, September 27, and October 1, 2007, respectively. These actions were timely removed to this Court on October 30, 2007, by Defendant Jackson Hospital Corporation d/b/a Kentucky River Medical Center (hereinafter, "KRMC"), alleging federal question jurisdiction.

**B.   Plaintiffs White and Gross**

Plaintiffs White and Gross were first employed by KRMC in 1993. At the time of the events alleged in their Complaints, they worked as registered nurses in the intensive care unit (hereinafter, "ICU") at KRMC. Beginning in 2000, White and Gross

2

became active in the United Steelworkers' Union, participating in a strike and picketing activity at KRMC in 2000, and serving as members of the union bargaining committee from approximately 2002 until their discharge in 2006.

According to White and Gross, the ICU at KRMC has the capacity to care for four critically ill patients, and registered nurses assigned to the ICU at KRMC were not to be assigned any more than two patients each.  During their shifts, the registered nurses were to care for the ICU patients, observe and attend to 16 telemetry monitors, provide nurse aid care to the patients (including turning and feeding them), "take off" doctors' orders, and answer the door and the phone for the ICU.  On June 21, 2006, KRMC enacted a policy of "calling off" ICU nurses, meaning that if only one or two patients were in the ICU, only one registered nurse would work and the other would be "called off," leaving one nurse to provide total care for the ICU patients, as well as to perform duties as a nurse aide, telemetry tech, and ward clerk.   In the period leading up to their termination, White and Gross had complained to KRMC that the "call off" procedure was an unsafe practice for patients and the nurses working in the ICU.

On September 14, 2006, an incident occurred involving a blood transfusion for a patient in the ICU.  White and Gross were both working in the ICU that day.  Although the patient was not harmed, White promptly reported the incident to the supervisor.  White and

Gross allege that they were informed by their supervisor on September 15, 2006, that they would receive a write-up for the incident and possibly be subject to a probation period but that the situation did not call for a suspension. On September 19, 2006, they allege that the union negotiator was informed by a KRMC representative that White and Gross would be suspended for the incident. White and Gross allege that they were not directly informed by KRMC that they would be suspended without pay until each received a letter dated September 25, 2006, or that they would be terminated for the incident until each received a letter dated October 2, 2006.

White and Gross allege that, until the incident in question, each had received good yearly evaluations and had no previous write-ups and that other employees have not been terminated for similar or more serious issues concerning patient care. Each avers that, in fact, she was terminated (1) because she was a union negotiator and had been actively participating in bargaining sessions with KRMC and (2) because she had complained that the "call off" procedure was unsafe. White and Gross' Complaints allege that each was wrongfully discharged under Kentucky law in retaliation for union activity and for complaints about understaffing of nurses in their unit, an issue of patient safety, contrary to fundamental and well-defined public policy. Further, White and Gross complain that Defendant violated KRS 336.130 when

4

it suspended and, ultimately, terminated their employment at KRMC.

C.   **Plaintiff Combs**

Plaintiff Combs began to work for KRMC in January 2003 as a registered nurse in the medical surgical unit of KRMC.  She joined the union bargaining committee in April 2006.  On December 12, 2006, Combs spoke with the administrator of KRMC, concerning a new "delivery of medication" policy that had gone into effect on December 11, 2006.  Combs explained to the administrator that she and other nurses were having difficulty understanding and implementing the policy and that she was, thus, reluctant to "sign off" on the fact that she knew how to fulfill the policy when, in fact, she did not.  Combs indicated to the administrator that she had asked the Unit Manager of the Medical/Surgical floor for clarification of the policy and that the manager could not answer the questions.

A meeting was convened on December 13, 2006, during which Debbie Linkous, the Director of Nursing, Marie Haddix, a registered nurse, and Kathy Thacker, the Medical/Surgical Unit Floor Manager, discussed the policy on the delivery of medication with Combs.  Judy Patton, another nurse, attended the meeting with Combs to serve as a witness.  During the meeting, Combs indicated that she was reluctant to sign off on a policy that she could not fulfill.  Linkous indicated that revisions to the policy would be forthcoming, pursuant to Comb's suggestions, and asked her to sign

5

off on the policy.  Combs agreed to do so, subject to the revisions that were to be made.

On January 10, 2007, Combs was questioned by Thacker about the way in which she had delivered medication to a certain patient. Combs indicated to Thacker that she had done so in a manner consistent with the revised policy.  Combs and fellow nurse, Deborah Adams, went to see Linkous to discuss the delivery of medication issue later the same day.  They left the meeting with the understanding that the policy would be reviewed and another meeting would be held to discuss the policy in the future.

On January 18, 2007, Combs was paged to a meeting to discuss a decision that had been reached concerning the issue they had discussed the previous week.  Combs understood this to mean that the discussion would address the policy on the delivery of medication.  Combs asked Deborah Adams to attend the meeting with her since she had been present for the January 10, 2007, discussion on the issue.  When Combs and Adams arrived for the meeting, Linkous was present as were Thacker and Human Resource Manager Naomi Mitchell.  Due to Mitchell's presence, Combs believed that the meeting was not to be a discussion about the medication policy but, instead, that some type of employment action was about to occur.  Linkous stated that Adams could not stay for the meeting, and Adams left the room.  Combs told Linkous that she believed she had the right to union representation at the meeting, whether that

6

representative was Adams or another union representative.  Linkous then suspended Combs indefinitely pending investigation of an unspecified matter.  Combs was not told what "the matter" was or what the investigation would be.  Subsequently, on January 22, 2007, Combs spoke with a physician at KRMC who related that Linkous had suspended Combs because she wanted a third person in the January 18, 2007, meeting.  Linkous then wrote a letter to Combs, postmarked January 23, 2007, indicating that she had been suspended because she had failed to participate in a disciplinary meeting without union representation.

Combs alleges that she was suspended because she requested that a union representative join the January 18, 2007, meeting, and that her suspension ultimately became a termination.  She believes that, in addition to her insistence on the presence of a union representative at the January 18 meeting, that she was terminated due to other union activity, including her membership on the union bargaining committee and participation in bargaining sessions with KRMC.  Combs' Complaint alleges that she was wrongfully discharged under Kentucky law, contrary to fundamental and well-defined public policy, and that Defendant violated KRS 336.130 when it suspended and, ultimately, terminated her employment at KRMC.

## II.  ANALYSIS

Where state law claims alleged in a plaintiff's complaint require interpretation of a collective bargaining agreement

(hereinafter, "CBA"), the plaintiff's claims are converted to a federal claim for purposes of the well-pleaded complaint rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). If resolution of state law claims requires interpretation of a CBA, the plaintiff's state law claims are preempted by § 301 and removal is proper. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412-13 (1988). In these matters, Plaintiffs contend that no interpretation of a CBA is necessary to resolve their state law claims and, as such, their claims are not converted to federal claims and removal was improper.

As summarized by the Sixth Circuit Court of Appeals in *Alongi v. Ford Motor Co.*:

> *The Labor-Management Relations Act.* Section 301(a) of the Labor-Management Relations Act provides that the federal district courts have plenary jurisdiction, without regard to citizenship or amount in controversy, over "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). The Supreme Court has recognized that the "unusually powerful pre-emptive force of § 301," *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 7, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (internal quotation marks omitted), places it in the small category of statutes that "not only pre-emp[t] state law but also authoriz[e] removal of actions that sought relief only under state law." *Ibid.* (citing *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968)). Section 301's sphere of complete pre-emption extends to state law claims that are "substantially dependent on analysis of a collective bargaining agreement," but it does not reach

8

claims that only "tangentially involve CBA provisions." *Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 799-800 (6th Cir.1990) (internal quotations omitted); *see DeCoe v. Gen. Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994) ("[S]ection 301 preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms."); *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

*Alongi v. Ford Motor Co.*, 386 F.3d 716, 723-24 (6th Cir. 2004).

Further, this Court must *first* consider the question of whether the Plaintiffs' claims are completely preempted under § 301, "since if none of [P]laintiffs' claims are completely pre-empted, then [this Court] lack[s] jurisdiction over this dispute between non-diverse parties," and it would be inappropriate to proceed to the question of whether preemption occurs under §§ 7 and 8 of the NLRA, *see* 29 U.S.C. §§ 157-158, as urged by Defendant in its amended Notices of Removal, Responses in opposition to the Motions to Remand, and its Motions to Dismiss filed in these matters. *Alongi*, 386 F.3d at 724. That issue would remain, after remand, to be considered by the state court.

In deciding whether § 301 complete pre-emption applies to a state-law claim, the Court must apply a two-step approach: (1) "examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms" and (2) "ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Id*. at 724 (citing *DeCoe,* 32 F.3d at 216). "If the right both arises from

9

state law and does not require contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, § 301 preemption is warranted." *Id.*

On their faces, the Complaints in these matters allege no claims under any contract, let alone a CBA.[1]  Plaintiffs have clearly identified rights created by state law – to be free of unlawful wrongful discharge and a private action for violations of KRS 336.130.  Defendant argues, however, that the resolution of Plaintiffs' wrongful discharge and KRS § 336.130 claims will require the Court to interpret KRMC's employment policies regarding suspension, discharge, the call-off policy of which Plaintiffs White and Gross complained, and whether Plaintiff Combs had the right to demand union representation during that fateful January 18, 2007, meeting – all arguably part of a *de facto* CBA at the facility.

Plaintiffs have directed the Court's attention to the decision of its sister court in *Jackie Smith v. Kentucky River Medical Center*, Lexington Civil Action No. 05-23-KSF (E.D.Ky.), in an order entered on April 14, 2005.  In *Smith*, the Court relied on the

_____

[1]

Indeed, Plaintiffs argue that there exists no CBA between the union and KRMC.  Defendant argues that certain policies and agreements in place at the time that its facility became unionized constitute a *de facto* CBA.  Since the Court has determined that it will not need to interpret the so-called *de facto* CBA, it need not determine whether there is, in fact, a CBA in place at the KRMC facility.

10

explanation of Labor-Management Relations Act (hereinafter, "LMRA") premption in *Alongi v. Ford Motor Co.* in evaluating whether Smith's constructive discharge claim was preempted by § 301, ultimately determining that Smith's state law claim had not been transformed into a federal claim and remanding the matter to state court. Defendant has attempted to draw a distinction between the cases, arguing that, unlike *Smith*, Plaintiffs have alleged wrongful discharge, not constructive discharge. Further, argues Defendant, it has identified a CBA and, specifically, those portions which it believes to be applicable in this case, providing copies of the materials which arguably comprise a *de facto* CBA. These distinctions are noted. As in *Smith*, however, this Court must still consider whether a resolution of the allegations raised in the Complaint would require interpretation of the alleged CBA, and the analysis undertaken in *Smith* is instructive.[2]

Plaintiffs have not alleged a breach of any contract – CBA or otherwise. Rather, each alleges that her employer wrongfully discharged her and, by its actions, violated KRS 336.130 when it

---

[2]

Defendant also argues, to no avail, that Plaintiff's statutory claim is not analogous to the claims stated in *Smith* because KRS 336.130 is preempted in this instance by §§ 7 and 8 of the NLRA and that, thus, *Smith* cannot provide any logical or persuasive guidance. As explained above, the Court must first consider whether the matter was suitable for removal to this court under § 301 of the NLRA. If the Court does not have subject matter jurisdiction based on § 301 preemption, the Court does not have jurisdiction to consider preemption under §§ 7 and 8.

terminated her employment due to her participation in union activity. The elements of a wrongful discharge claim under Kentucky law are as follows:

> 1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.

> 2) That policy must be evidenced by a constitutional or statutory provision.

*Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). Whether the public policy meets these criteria is a question of law. *Id.* Certainly, KRS 336.130 announces a policy against terminating employees in retaliation for the participation in union activity. With regard to the allegations of Plaintiffs White and Gross, the Kentucky Patient Safety Act, KRS § 216B.165(3) announces a policy against terminating employees in retaliation for reporting, disclosing, divulging, or otherwise bringing to the attention of the health care facility or service the circumstances or facts which are believed to place patient and employee safety in jeopardy. In other words, Plaintiffs' Complaints set out colorable claims grounded in rights created by state law.

Their allegations place at issue each plaintiff's own actions and, no less, the actions and motivations of KRMC in order to determine whether each plaintiff's termination was, as alleged, contrary to a fundamental and well-defined public policy evidenced by existing law, notably KRS § 336.130 and KRS § 216B.165. *Grzyb,* 700 S.W.2d at 401. Even though union activity and policies and

12

procedures in place at the facility will be considered in an evaluation of Plaintiffs' claims, it does not follow that Plaintiffs' claims are substantially dependent on analysis of a CBA.  True, the call-off procedure is arguably part of a *de facto* CBA in place at the facility where Plaintiffs worked and some consideration of the call-off policy will undoubtedly be necessary to flesh out the allegations as the matters proceed.  That said, neither the call-off policy nor any party's adherence to it is on trial in this matter.  "[§] 301's sphere of complete pre-emption . . . does not reach claims that only 'tangentially involve CBA provisions.'" *Alongi*, 386 F.3d at 724 (quoting *Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 799-800 (6th Cir.1990); *Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994)).  The fact that Defendant has raised as part of its defenses whether its actions were justified because it adhered to employment practices and procedures required by a *de facto* CBA in terminating Plaintiffs is irrelevant.  Those defenses do not establish preemption even though they might require some interpretation of that portion of the putative CBA.  As explained in *Caterpillar, Inc.*:

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule-that the plaintiff is the master of the complaint, that

13

> a federal question must appear on the face of
> the complaint, and that the plaintiff may, by
> eschewing claims based on federal law, choose
> to have the cause heard in state court. When a
> plaintiff invokes a right created by a
> collective-bargaining agreement, the plaintiff
> has *chosen* to plead what we have held must be
> regarded as a federal claim, and removal is at
> the defendant's option. But a *defendant*
> cannot, merely by injecting a federal question
> into an action that asserts what is plainly a
> state-law claim, transform the action into one
> arising under federal law, thereby selecting
> the forum in which the claim shall be
> litigated.

*Caterpillar, Inc.,* 482 U.S. at 398-99 (cited in *Alongi*, 386 F.3d at 727-28). Only Plaintiffs' claims are relevant to the analysis performed by this Court.

At the end of the day, Plaintiffs' wrongful discharge claims and claims for violation of KRS 336.130 are independent of any CBA and are not preempted by § 301 of the LMRA. Simply stated, this Court does not have jurisdiction over the claims of the Plaintiffs, raised exclusively under state law.

## III. CONCLUSION

For all of the reasons stated above, Plaintiffs Motions to Remand shall be granted.

Accordingly, **IT IS ORDERED**:

(1) that Plaintiffs' Motions to Remand [Lexington Civil Action No. 07-cv-366-JMH, Record No. 12; Lexington Civil Action No. 07-cv-367-JMH, Record No. 15; and Lexington Civil Action No. 07-cv-368-JMH, Record No. 11] shall be, and the same hereby are, **GRANTED**;

14

(2)  that the above-styled actions shall be, and the same hereby are, **REMANDED** to the Breathitt Circuit Court; and

(3)  that the above-styled actions be, and the same hereby are, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET**.

This the 23rd day of January, 2008.

Signed By:

_**Joseph M. Hood**_

Senior U.S. District Judge

15